## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

K-Fab, Inc. Employee Benefit Plan and )
K-Fab, Inc., individually and on behalf of )
Plan participants, )
                    )
      Plaintiffs, )
                    )
v. )     Civil Action No. _____
                    )
Roscommon Insurance Company, )
Roscommon Member Plan Master )
Trust, Stone Mountain Risk, LLC, and )
Risk Partners, Inc., )
                    )
      Defendants. )

## PLAINTIFFS' COMPLAINT

      COMES NOW Plaintiffs K-Fab, Inc. Employee Benefit Plan ("Plan") and K-Fab, Inc. ("K-Fab"), by and through counsel, and for their Complaint against Defendants Roscommon Insurance Company ("Roscommon"), Roscommon Member Plan Master Trust ("Trust"), Stone Mountain Risk, LLC ("Stone Mountain"), and Risk Partners, Inc. ("Risk Partners") hereby allege as follows:

## NATURE OF THE ACTION

    1.      The Plan is an employee welfare plan sponsored by K-Fab for its eligible employees and their dependents. For 2022, K-Fab transitioned its health plan to a self-funded plan by adopting the "Roscommon Benefits Program", including services through the Roscommon Member Plan Trust and stop loss coverage provided through a policy

issued by Roscommon through its general agent Stone Mountain. At all times pertinent hereto Risk Partners was the Trustee of the Roscommon Member Plan Trust. Plaintiffs timely paid all premiums and fees due to Defendants relating to the Policy and provided Defendants with all the information necessary to process and pay stop-loss coverage under the Policy. Defendants wrongfully failed to pay all stop-loss payments due pursuant to the stop-loss policy. Defendants' unreasonable, intentional, and illegal failure to pay caused Plaintiff K-Fab to incur costs related to claims in excess of the stop-loss attachment point. Plaintiffs seek actual damages, special damages, consequential damages, punitive damages, reimbursement, prejudgment interest, equitable relief, attorney's fees, costs, and expenses.

## VENUE AND JURISDICTION

2.     This Court has original and exclusive jurisdiction over the claims contained Count Five of this Complaint pursuant to 28 U.S.C. § 1131 and 29 U.S.C. § 1132(e) because the matter arises under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a)(3). Further this Court has original jurisdiction over Counts One through Four pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.     This Court also has supplemental jurisdiction over Counts One through Four of this Complaint pursuant to 28 U.S.C. § 1367 because said Counts are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1132(e)(2) because Defendants conducted business in this judicial district and the causes of action arose in Columbia County, Pennsylvania.

5.      Plaintiff K-Fab, Inc. is a corporation organized in the Commonwealth of Pennsylvania, with office and place of business at 1411 Vine Street, Berwick, Columbia County, Pennsylvania, and which is licensed to do business in this state.

6.      Plaintiff K-Fab, Inc. is the plan sponsor of the K-Fab, Inc. Employee Benefit Plan.

7.      Plaintiff K-Fab, Inc. Employee Benefit Plan is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. §§ 1132(d)(1) *et seq.*

8.      The Plan provides group medical benefits to certain eligible employees of K-Fab and their eligible dependents in Pennsylvania.

9.      Under ERISA, as a fiduciary of the Plan, K-Fab has standing to sue to enforce Plan terms and for other equitable relief.

10.     Defendant Roscommon Insurance Company is a corporation organized and existing under the laws of the State of South Carolina, with office and place of business at 1904 Savannah Highway, Unit 202, Charleston, South Carolina.

11.     Upon information and belief, Defendant Roscommon is not licensed by the Pennsylvania Insurance Department to offer stop-loss insurance in this state.

12.     Defendant Roscommon issued stop loss coverage for the Plan under policy number R2022-01-11563 (the "Policy").  A true and accurate copy of the Policy is attached as **Exhibit 1.**

3

13.     The Policy is governed by the laws of the State of South Carolina. *Ex. 1, Policy, p. 1.*

14.     Defendant Stone Mountain Risk, L.L.C. is a limited liability company organized under the laws of Delaware, with office and place of business at 16192 Coastal Highway, Lewes, Delaware, and upon information and belief is not authorized to do business in Pennsylvania.

15.     Defendant Stone Mountain is the managing general underwriter ("MGU") with regard to Roscommon and the Policy.

16.     Defendant Roscommon Member Plan Master Trust is a trust domiciled in the State of South Carolina, with office and place of business at 1904 Savannah Highway, Unit 202, Charleston, South Carolina, and governed by the laws of South Carolina.[1]

17.     Defendant Risk Partners, Inc., is a corporation organized and existing under the laws of New Jersey, with office and place of business at 2001 Bishops Gate, Blvd., Mount Laurel, New Jersey, and who may be served through its registered agent for service of process, Corporation Service Company at 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.

---

[1] The Roscommon Member Plan Master Trust is named as a Defendant pursuant to Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## FACTS

18.     Plaintiff K-Fab has provided group health insurance to its eligible employees and their dependents for many years.

19.     Prior to 2022, these group health insurance benefits were provided through a fully insured arrangement whereby K-Fab paid premiums to an insurance company which fully accepted the risk to pay eligible claims.

20.     Prior to 2022, K-Fab consulted with its insurance broker regarding whether to continue to fully insure the group health benefits or switch to a self-insured model.

21.     Under a fully insured group health plan, the employer pays premiums to an insurance carrier based on the number of employees covered under the plan.  The insurance carrier pays the covered medical claims in exchange for the premiums received from the employer.  The insurance company is at risk to pay eligible claims even if the claims exceed the amount of premiums paid by the employer.

22.     In a self-insured group health plan, instead of paying premiums to an insurance company, the employer pays a specific amount to be set aside for administrative fees, stop-loss insurance and expected medical claims.  The employer is responsible for paying eligible medical claims out of these amounts.  The employer accepts the risks for funding the full amount of the insurance claims unless it takes actions to mitigate such risk by purchasing stop-loss insurance which reimburses for claims that go beyond a pre-determined level (referred to generally as an "attachment point").

23.    Roscommon and Stone Mountain were recommended by K-Fab's insurance broker to transition the plan funding from fully insured to self-insured, including to provide stop loss indemnity coverage in relation to the Plan.

24.    K-Fab's insurance broker provided K-Fab with information from Stone Mountain and Roscommon as to self-insuring its health benefits, including the calculation of the "premium" and the attachment point for the stop-loss policy based on the demographics and health history of K-Fab's employee population.

25.    The plan proposed by Stone Mountain and Roscommon was a level-funded plan with stop-loss coverage, meaning K-Fab as the employer would be responsible to contribute an amount to the Trust each month to a claim fund based on participant demographics that month, as well as a premium for on the stop-loss policy plus administrative costs.  Under this arrangement, K-Fab would have no liability for claims incurred in excess of its required funding payments, and Roscommon, as the stop-loss insurer, would assume liability for claims in excess of the total of the funding payments made by K-Fab.

26.    Stone Mountain, as the managing general underwriter for Roscommon, provided K-Fab with a quote to self-insure its health benefits for the 2022 calendar year utilizing this level-funded approach and, upon K-Fab's acceptance of such quote, arranged for the transition of the Plan to a self-funded plan.

27.    As the managing general underwriter for Roscommon, upon information and belief, Stone Mountain was responsible for evaluation of the risks, underwriting of the risks, binding of the risks, fiscal representation, pricing, wording, special conditions, and

appointment of retail agents, handling and adjusting of claims as well as claims payment.

28.    As the managing general underwriter for Roscommon, upon information and belief, Stone Mountain was responsible for establishing the monthly funding amounts due from K-Fab as part of the level-funded arrangement and the attachment point under the stop-loss policy.

29.    As part of the transition to a self-funded plan, K-Fab was presented with the "Roscommon Benefits Program Employer Agreement" (the "Employer Agreement"). A true and accurate copy of the Employer Agreement is attached as **Exhibit 2.**

30.    Under the terms of the Employer Agreement, K-Fab agreed, among other things:

    a) To adopt the Roscommon Health Plan to provide health benefits to its employees;

    b) Allow the assets of the Plan to be held in a segregated portion of the Roscommon Member Plan Master Trust;

    c) To appoint Risk Partners as the Trustee "to handle the funds of your Plan and take certain actions on behalf of the Plan";

    d) That Stone Mountain Risk would direct the Trustee to act on K-Fab's behalf;

    e) That Risk Partners, acting as the Trustee, would purchase an indemnity policy (i.e., stop-loss policy) from Roscommon, which will "pay claims under the Plan if they exceed a predetermined level"; and

7

  f) To enter into a contract with a third-party administrator approved by Roscommon to process all claims for benefits under the Plan.

  *See, Ex. 2, Employer Agreement, p. 1.*

31. The Employer Agreement states that if claims under the Plan exceed a predetermined attachment point, Roscommon "will reimburse the Trust on behalf of your Plan for those excess claims as set forth in the Indemnity Insurance Policy." *See, Ex. 2, Employer Agreement, p. 2.*

32. The Employer Agreement states that Stone Mountain "will be the Agent of Record on all Indemnity Insurance Policies issued by [Roscommon] to the Roscommon Member Plan Master Trust on behalf of the employers that participate in the Trust." *See, Ex. 2, Employer Agreement, p. 2.*

33. The Employer Agreement states that "[i]n the event claims exceed the Attachment Point of the Indemnity Insurance Policy, the TPA shall submit those claims to [Roscommon]. Provided [Roscommon] agrees that the claims are covered by the Indemnity Insurance Policy, [Roscommon] shall deposit such funds as are necessary in the Bank Account so that the TPA may pay the claims." *See, Employer Agreement, p. 3.*

34. Pursuant to the Employer Agreement, K-Fab entered into an Administrative Services Agreement with 90 Degree Benefits[2], the third-party administrator approved by Roscommon.

35. Under the terms of the Administrative Services Agreement, 90 Degree Benefits agreed to process claims under the Plan and to file claims for benefits under any excess loss policy.

---

[2] 90 Degree Benefits is also sometimes referenced using its former name "EBSO, Inc."

36.     As part of the transition to a self-funded plan, Risk Partners presented K-Fab with a Declaration of Trust for the Roscommon Member Plan Master Trust along with a Trust Adoption Agreement (collectively, the "Trust Agreement").  A true and accurate copy of the Trust Agreement is attached as **Exhibit 3.**

37.     Under the terms of the Trust Agreement, Risk Partners was named as the trustee of the Trust.  *See, Ex. 3, Trust Agreement, Art. I, Section 18.*

38.     Under the terms of the Trust Agreement, Risk Partners, as the named trustee, was bestowed with certain duties and powers, including the duty to "hold, manage, care for, and protect the Trust Fund for the exclusive benefit of the Participants and Beneficiaries and for the exclusive purpose of providing benefits to Participants and their Beneficiaries, and for defraying the costs of establishing or administering the Trust and the Plan." *See, Ex. 3, Trust Agreement, Art. III, Section 1.*

39.     Additionally, under the terms of the Trust Agreement Risk Partners had the "authority to manage and control the Trust Fund, including the authority:

    a)  To receive and hold contributions and other assets of the Trust Fund;

    b)  To pay benefits to Participants and their Beneficiaries pursuant to the Plan;

    c)  To purchase such insurance policies as are selected by the Employer or the Administrator;

       .....

    f)  To make any other required distributions, disbursements, or transfers of assets of the Trust Fund; and

g) To maintain records of receipts and disbursements of the Trust Fund."

*Ex. 3, Trust Agreement, Art. III, Section 2.*

40.    Pursuant to the terms of the Employer Agreement, Risk Partners procured the Policy from Roscommon to provide stop-loss coverage for the Plan for the period of January 1, 2022, to January 1, 2023.

41.    The Policy identifies the Policyholder as the "Roscommon Member Plan Master Trust for the Roscommon Benefit Program of K-Fab, Inc." *Ex. 1, Policy, p. 1.*

42.    Under the terms of the Policy, Roscommon agreed to "reimburse employee benefit expenses incurred by the Policyholder, when the Policyholder's health plan has incurred expenses in excess of the individual and/or aggregate (whichever is applicable) deductibles outlined in the Policy". *Ex. 1, Policy, p. 2.*

43.    The Policy obligates Roscommon to pay 100% of the excess of the "Aggregate Claim Payment minus the Aggregate Deductible up to the Maximum Benefit for Aggregate Losses." *Ex. 1, Policy, p. 7.*

44.    "Aggregate Claim Payment" is defined in the Policy as "claims paid by the Policyholder for Covered Persons as required by the Plan within the Coverage Period." *Ex. 1, Policy, p. 4.*

45.    "Aggregate Deductible" is defined in the Policy as "the sum of the Monthly Calculated Deductible for each month in the Policy Year or the Minimum Aggregate Deductible shown in the Schedule of Benefits." *Ex. 1, Policy, p. 4.*

46.    The "Monthly Calculated Deductible" (MCD) is the equal to the monthly employer contribution required to be made by K-Fab based on the cost of coverage provided to its employees and dependents (referred to in the Policy as the "Employee

Only Monthly Calculated Deductible Factor" and the "Employee with Dependents MCD Factor"). *Ex. 1, Policy, p. 5.*

47.     The Policy also provides for "Aggregate Advancements" for the payment of eligible claims losses.  At the end of the Policy Year, the Trust was obligated to repay the excess of any Aggregate Advancement(s) over the accumulated Monthly Calculated Deductible. *Ex. 1, Policy, Aggregate Advancement Endorsement.*

48.     The Policy states that "[c]laim payments incurred on behalf of each employee and his or her eligible dependents covered under the Employer's Plan are eligible for coverage on the Policy Effective Date." *Ex. 1, Policy, p. 6.*

49.     The Policy covers eligible claims incurred from January 1, 2022 (the Policy Effective Date) through January 1, 2023 (the Policy Termination Date), as well as eligible claims paid during the "run-out period" ending on July 1, 2023.  *See, Ex. 1, Policy, p. 1 and attached Application for Indemnity Insurance, p. 2.*

50.     Under the terms of the Policy, Roscommon did not have the power to allow or disallow any claims under the Plan; rather, it relied on 90 Degree Benefits as the third-party claims administrator to review claims submitted under the Plan and determine whether such claims were covered under the Plan.

51.     The Policy states that "[t]he Insurance Company will pay benefits as soon as reasonably possible after a request for payment is made." *Ex. 1, Policy, p. 7.*

52.     K-Fab has been subjected to liability for claims incurred under the Plan in excess of the Aggregate Deductible stated in the Policy.

53.     Each month during the 2022 plan year, 90 Degree Benefits, as the third-party claims administrator, submitted an invoice to K-Fab representing the monthly

amounts due for the operation of the Plan. This total included the Policy premium due Roscommon, the amount to be transferred to the Trust for payment of claims, and the administrative fees due the Plan's service providers, including Stone Mountain Risk and various claim management entities.

54.    The amount to be transferred to the Trust each month by K-Fab was calculated using a per participant fee based on the employees and dependents participating in the Plan during that month. The per participant fee, referred to as the "Aggregate Factor," was determined by Stone Mountain Risk at the beginning of the Policy.

55.    This amount was deposited into the Trust "Claim Fund" each month by K-Fab and used to pay eligible claims under the Plan.

56.    For 2022, K-Fab contributed $914,945.01 to the Trust for the payment of claims.

57.    K-Fab paid all required premiums to Roscommon for the Policy when due for 2022, totaling $559,144.81.

58.    K-Fab paid all administrative fees for claims adjustment, medical management, pharmacy management and other Plan services when due for 2022, totaling $345,631.40.

59.    90 Degree Benefits, as the approved third-party claims administrator of the Plan, provided monthly claims reporting to Roscommon detailing K-Fab's contributions to the Trust, aggregate claims payments and the applicable Monthly Aggregate Deductible.

60.    In approximately April 2022, K-Fab expressed concerns regarding customer service provided to its participants and pharmacy costs under the Plan.  As a result, Del Lockett, on behalf of Stone Mountain Risk, spearheaded an effort among the Plan's service providers to resolve these concerns by instituting additional customer service features in addition to the existing pharmacy management services being provided.

61.    In May 2022 Stone Mountain Risk asked K-Fab to execute two letters to be sent to 90 Degree Benefits and Elixir, the Plan's pharmacy administrator, to further address K-Fab's concerns by allowing other Plan service providers responsible for claims management to work directly with K-Fab employees and negotiate lower pharmacy costs on their behalf.

62.    K-Fab signed these two letters on July 22, 2022.  True and correct copies of these letters are attached hereto as collective **Exhibit 4.**

63.    After executing these two letters, K-Fab did not receive any further requests from any of the Defendants to execute other documents and take any other steps regarding its operation of the Plan.

64.    The first reporting provided by 90 Degree Benefits to Roscommon detailed claims incurred and K-Fab's contributions to the Trust through May 30, 2022, the calculation of the cumulative Monthly Calculated Deductible and included a formal request for payment under the Policy (the "May 2022 Report").

65.    The May 2022 report was sent to Roscommon on June 13, 2022 and showed that, as of May 30, 2022, K-Fab had met the Aggregate Deductible under the Policy such as to trigger payments by Roscommon under the terms of the Policy.

13

66.     Thereafter, based on claims reporting providing by 90 Degree Benefits to Roscommon and requests to pay amounts due under the terms of the Policy, Roscommon made "Aggregate Advance" payments to the Trust for the payment of claims, one in July totaling $1,141.65 and one in August totaling $121,947.61.

67.     Thereafter, K-Fab continued to make the required monthly contributions to the Trust for the payment of claims and pay premiums to Roscommon for the Policy.

68.     Thereafter, 90 Degree Benefits continued to send monthly claims reporting containing information regarding claims incurred, K-Fab's contributions to the Trust, the cumulative Monthly Calculated Deductible and a formal request for payment under the Policy.

69.     Each subsequent report provided by 90 Degree Benefits to Roscommon evidenced that the Aggregate Deductible had been met under the Policy, the required contributions to the Trust were being made by K-Fab and all administrative fees and premiums were being timely paid.

70.     Roscommon was contractually obligated to pay stop-loss coverage once the Aggregate Deductible was met and all premiums were timely made.

71.     Thereafter, despite receiving additional monthly claims reporting notifying Roscommon that the Plan had satisfied the Aggregate Deductible under the Policy and requesting payment under the terms of the Policy, Roscommon wrongfully failed and continues to fail to make any further payments due under the Policy.

72.     As of April 30, 2023, total claims under the Plan for 2022 eligible to be applied toward the Aggregate Deductible under the Policy total $3,395,731.95. This amount does not reflect any additional eligible claims submitted from May 1, 2023

through the end of the Policy run-out period ending on July 1, 2023, or any discounts negotiated on such claims.

73.    Based on these total claims incurred, and deducting amounts already deposited into the Claim Fund by K-Fab and the previous payments by Roscommon, as of April 30, 2023 stop-loss payments of $2,357,697.68 are owed by Roscommon under the Policy, less any negotiated discounts.

74.    By letter dated January 20, 2023, Del Lockett on behalf of Roscommon informed Plaintiffs that Plaintiffs' alleged failure to cooperate in the administration of the Plan had resulted in "run-away claims", specifically Plaintiffs' failure to provide an explanation regarding the delay in the execution of the two letters and their alleged failure to respond to calls from the Plan's medical management company (the "January 2023 Letter").[3]

75.    In the January 2023 Letter, Roscommon stated that this alleged failure to cooperate and "ignoring the Medical Management coordination documents has resulted in the run-away claims on your Plan" and concluded that it "cannot be responsible for reimbursing unmanaged claim costs."

76.    The "Medical Management coordination documents" referenced in the January 2023 Letter as the basis for Plaintiff's alleged failure to cooperate and "run-away claims" were signed by Plaintiffs in July 2022, well before the January 2023 letter. *See, Ex. 4.*

---

[3] The January 20, 2023 letter was from Del Lockett on behalf of International Captive Exchange, LLC. Upon information and belief, International Captive Exchange, LLC is the captive insurance company that underwrites stop-loss policies issued by Roscommon and is authorized to speak on behalf of Roscommon as to the terms of the Policy.

77.     In the January 2023 Letter Roscommon offered its previous payment of $121,947.61[4] as "payment in full for all Agg Claims for your health Plan."

78.     As of the end of January 2023, the total amount due from Roscommon was approximately $2,203,390.28.

79.     During discussions between Plaintiffs and Defendants following Plaintiffs' receipt of the January 2023 Letter, Roscommon revised its basis for denying payment under the Policy by claiming that it had not received any claims or other data from 90 Degree Benefits upon which it could determine whether payment was due under the Policy.

80.     This new alleged basis for denying payment was in direct contradiction to the statement in the January 2023 Letter that Roscommon "[has] been reviewing all of the Aggregate Claims that have come in from your Third-Party Administrator to determine how this lack of your cooperation has impacted the financial outcome of each claim."

81.     As stated above, 90 Degree Benefits provided monthly claims reporting to Roscommon during 2022 and continuing in 2023 during the Policy run-off period sufficient for it to determine whether payment was due under the Policy.

82.     Additionally, on March 24, 2023, counsel for K-Fab received an email from Del Lockett, the same individual who signed the January 2023 Letter, in which he, , on behalf of Roscommon provided yet another excuse for Roscommon's failure to pay under the terms of the Policy and requested additional information relating to claims

---

[4] The payment amount referenced in the January 2023 Letter does not reflect the total payments made by Roscommon as of that date.  As of the January 2023 letter Roscommon had actually made payments totaling $123,089.26.

under the Plan to prove that K-Fab utilized the services of the medical management company throughout the term of the Policy and its run-out period.

83.    Upon information and belief, the information requested in the March 24, 2023 email had been provided to Defendants by 90 Degree Benefits during the 2022 plan year.

84.    Despite meeting the Aggregate Deductible under the Policy and receipt of all information requested or required under the Policy, Defendants have failed to make any additional payments under the Policy.

85.    On April 24, 2023, in an effort to prevent further harm to its employee participants in the Plan resulting from outstanding medical bills and to mitigate damages, K-Fab transferred Five Hundred Thousand Dollars ($500,000) to the Claim Fund account to be used for the payment of outstanding claims under the Plan.

86.    In denying said stop-loss payments, Defendants failed to follow the terms of the Policy.

87.    Plaintiffs relied upon the insurance expertise of Defendant Stone Mountain to find and procure stop-loss coverage from a trustworthy, credible, and reliable source.

88.    Defendants breached their contractual and fiduciary duties to the Plan and plan participants and caused Plaintiffs to expend thousands of dollars to pay claims in excess of the Aggregate Deductible stated in the Policy.

89.    Plaintiffs are seeking common law and statutory remedies against the various Defendants.

90.    Upon information and belief, Defendants are currently defending a lawsuit in the District Court for the District of South Carolina brought by another employer alleging

similar conduct by Defendants relating to payment of claims under a group health plan and stop-loss policy similar to the policy at issue in this case.

## SINGLE BUSINESS ENTERPRISE

91.     At all times pertinent hereto, Roscommon, Stone Mountain and Risk Partners acted as a single business enterprise and are jointly and severally liable in this action for each other's tortious conduct. Roscommon, Stone Mountain, and Risk Partners created, procured, and combined these separate legal entities to obscure conflict of interest and to defraud employers and plans such as Plaintiffs.

92.     These Defendants created an interlocking series of entities such that employers and their self-funded plans would not know that certain Defendants were conspiring to deny legitimate claims under stop-loss policies such as the Policy.

## COUNT ONE
## AS TO ALL DEFENDANTS
(Breach of Contract)

93.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 92 as if fully set forth herein.

94.     A true and accurate copy of the Policy is attached as **Exhibit 1**.

95.     Upon information and belief, there is a contract and/or mutual agreement between Roscommon, Stone Mountain, and Risk Partners as to handling claims for payment under the Policy.

96.     The premiums paid by K-Fab and the continued acceptance of such premiums by Roscommon and Stone Mountain constitute sufficient consideration to support the contract.

97.     Plaintiffs performed all their duties under the contract.

98.     Under the terms of the Policy, K-Fab was eligible for indemnity coverage for its Plan.

99.     By denying payment of stop-loss coverage under the Policy, Defendants breached the terms of the Policy.

100.    As a result, these Defendants received a windfall in premium payments from K-Fab and the Plan.

101.    Plaintiffs made a demand to these Defendants for relief and remedies, but Defendants have refused to honor their contractual obligation to pay stop-loss coverage as required under the Policy.

102.    Plaintiffs are due actual damages, restitution, indemnity, prejudgment interest, and consequential damages as a result of Defendants' breach in such amounts as will be proven at trial.

### COUNT TWO
### <u>AS TO ALL DEFENDANTS</u>
### (Breach of Contract Accompanied by a Fraudulent Act)

103.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 102 as if fully set forth herein.

104.    By presenting the "Roscommon Benefits Program", including the Trust and the Policy, Roscommon, Stone Mountain (as the managing general underwriter and agent for Roscommon) and Risk Partners (as the Trustee of the Trust) entered binding contracts to provide health benefits to K-Fab's employees and stop-loss coverage in relation to the Plan.

105.    Defendants breached their contracts.

106.    K-Fab is a party to the Trust by virtue of its adoption of the Trust through execution of the "Trust Adoption Agreement."

107.    K-Fab and the Plan are third-party beneficiaries of the Policy.

108. Defendants had fraudulent intent relating to the breach of the contracts in that they defrauded Plaintiffs into paying for premiums, claims services, fees, and stop loss coverage, most of which they never intended to provide, and which were never provided.

109.    Fraud is an intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to Plaintiffs.

110.  Prior to entering the Policy, Plaintiffs were unaware that Defendants' services and indemnity insurance were illusory.

111.    Plaintiffs relied upon these Defendants' promises to create a self-funded plan for eligible employees and their eligible dependents and to provide stop-loss coverage to mitigate the potential liability of K-Fab for claims incurred under the Plan.

112.    Plaintiffs, like other employers, were victimized by these Defendants who accepted premiums and fees, but who did not pay stop-loss claims as required under the Policy.

113.    These Defendants damaged Plaintiffs as a result.

114.    As a direct and proximate result of these Defendants' conduct alleged herein, Plaintiffs are entitled to recover actual damages, consequential, and punitive damages in such amounts as will be proven at trial.

**COUNT THREE**
**AS TO ROSCOMMON AND STONE MOUNTAIN**
**(Bad Faith Denial of Insurance Claims)**

115.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 114 as if fully set forth herein.

116.    In transacting, marketing, and selling insurance products within the State of South Carolina, Roscommon and Stone Mountain had affirmative and implied duties under South Carolina and common law to administer the Policy in good faith and timely pay benefits when due.

117.    At all times relevant herein, there existed in full force and effect S.C. Code Ann. § 38-59-20 (1999), which addresses improper claim practices. Pursuant to S.C. Code Ann. § 38-59-20, the conduct of Roscommon and Stone Mountain as outlined in this Complaint constitutes the commission of an act without just cause and a general business practice that is an improper claim practice.

118.    Roscommon and Stone Mountain had a statutory and common law duty to protect and serve the interests of Plaintiffs and their plan participants and deal fairly and in good faith with regard to Plaintiffs and their plan participants.

119.    By assuming liability for the Plan, Roscommon and Stone Mountain assumed duties and obligations in favor of Plaintiffs and their plan participants as set forth herein.

120.    Plaintiffs timely filed claims for coverage under the Policy for claims incurred in 2022.

121.    Defendants Roscommon and Stone Mountain were obligated to act in good faith according to the terms of the Policy.

21

122.    Defendants Roscommon and Stone Mountain refused to comply with or fulfill their obligations under the Policy and Plan and breached their duty of good faith and fair dealing in one or more of the following particulars:

a)    Refusing to act on the reasonable direction of the Plan Sponsor;

b)    Conspiring with other Defendants to engage in a pattern and practice of wrongfully denying legitimate claims;

c)    Not acting in the best interests of the plan participants;

d)    Exposing the Plan and Plan Sponsor to liability by failing to properly pay stop-loss benefits under the Policy;

e)    Knowingly misrepresenting pertinent facts or policy provisions relating to the coverage at issue, and providing deceptive and misleading information with respect to coverages;

f)    Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under the Policy;

g)    Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under the Policy;

h)    Not attempting in good faith to effect prompt, fair and equitable settlement of claims submitted to it in which liability has become reasonably clear;

i)    Compelling Plaintiff policyholders to institute suits to recover amounts reasonably due or payable with respect to claims arising under the Policy;

j)    Invoking or threatening to invoke policy defenses or to rescind the policy as of its inception, not in good faith and with a reasonable expectation of prevailing with respect to the policy defense or attempted rescission, but for the primary purpose of discouraging or reducing a claim; and/or,

k)    Any other practice which constitutes an unreasonable delay in paying or an unreasonable failure to pay or settle in full claims arising under the Policy.

123.   The actions of Roscommon and Stone Mountain as set forth herein were intentional, reckless, unreasonable, illegal, and in breach of the implied covenant of good faith and fair dealing arising under the Policy.

124.   As a direct and proximate result of the conduct of Roscommon and Stone Mountain as alleged herein, Plaintiffs have been injured and damaged by being forced to incur costs and expenses in obtaining an attorney and bringing this action.

125.   As a direct and proximate result of the conduct of Roscommon and Stone Mountain as alleged herein, Plaintiffs are entitled to recover actual damages, consequential, and punitive damages in such amounts as will be proven at trial.

## COUNT FOUR
## AS TO ALL DEFENDANTS
### (Civil Conspiracy)

126.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 125 as if fully set forth herein.

127.   Plaintiffs relied upon Stone Mountain to put together the self-funding arrangement for Plaintiffs.

128.   Plaintiffs relied upon Stone Mountain to properly calculate the risk of self-funding and present to Plaintiffs a quote for transitioning the Plan to a self-funded plan.

129.   As part of the presentation of the "Roscommon Benefits Program", Stone Mountain presented Roscommon to serve as the reinsurer a/k/a stop loss carrier.

130.   Stone Mountain presented Risk Partners and Roscommon as a package to Plaintiffs.

131.    Stone Mountain directed how much the Plan Sponsor needed to self-fund the Plan.

132.    Stone Mountain established the level of reinsurance a/k/a stop loss coverage needed for the Plan.

133.    Together, Stone Mountain, Roscommon and Risk Partners determined a group aggregate deductible for the Plan.

134.    Plaintiffs timely paid all premiums due under the Policy.

135.    Plaintiffs timely paid all Defendants for all fees and premiums due in connection with the Plan.

136.    These Defendants accepted payments from Plaintiffs.

137.    When these three Defendants realized that the Aggregate Deductible under the Policy was exhausted and that stop loss coverage was triggered, Defendants conspired to deny payment of stop-loss coverage under the Policy on unreasonable and illegal bases.

138.    Upon information and belief, these Defendants conspired to wrongfully deny payment under the Policy to limit their own exposure.

139.    Upon information and belief, these Defendants colluded to deny receipt of information necessary to process payment under the Policy.

140.    The primary purpose of these Defendants' actions was to injure Plaintiffs and their plan participants.

141.    Plaintiffs were damaged as a result of these Defendants' actions.

142.    These Defendants' actions could foreseeably cause injury to Plaintiffs and their plan participants.

24

143.    In particular, these Defendants' actions caused Plaintiffs to suffer special damages equal to the stop-loss payments due under the Policy, additional administrative costs relating to the additional documentation requested by Defendants, and costs associated with bringing suit to procure payment under the Policy.

144.    Plaintiffs are entitled to actual damages, special damages, punitive damages, and consequential damages including reasonable attorney's fees as a result Defendants' conspiracy, in such amounts as will be proven at trial.

## COUNT FIVE
## AS TO DEFENDANT RISK PARTNERS ONLY
### (Claim for equitable accounting under
### 29 U.S.C. § 1132 [ERISA § 502(a)(3)]

145.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 144 as if fully set forth herein.

146.    29 U.S.C. § 1132(a)(3) provides that a civil action may be brought –

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

147.    The Trust is the named policyholder of the Policy.

148.    As the Trustee of the Trust, Risk Partners was obligated to protect Plan assets held in the Trust for the exclusive benefit of the Plan participants, for providing benefits to Plan participants and defraying the costs of administering the Plan.

149.    Under the Policy, the Trust was entitled to reimbursement of claims in excess of the stated Aggregate Deductible.

150. Risk Partners violated its obligations under the Trust and 29 U.S.C. § 1132(a)(3) by not seeking reimbursement and/or aggregate advancements in relation to such excess claims under the Policy.

151. Risk Partners' failure to seek reimbursement and/or aggregate advancements under the Policy caused the Plan to incur additional expenses in the form of payment of such excess claims.

152. Plaintiffs are now being pursued by providers to pay outstanding claims that should have been paid under the terms of the Policy.

153. As a result of Risk Partners' failure, K-Fab, as a Plan fiduciary, seeks an equitable accounting under ERISA.

WHEREFORE, having fully set forth this Complaint, Plaintiffs respectfully demands judgment as follows:

a) As to Count One, awarding Plaintiffs damages against Defendants, joint and severally, including but not limited to compensatory, consequential and incidental damages in an amount to be determined at trial;

b) As to Count Two, awarding Plaintiffs damages against Defendants, jointly and severally, including but not limited to compensatory, consequential, punitive and incidental damages in an amount to be determined at trial;

c) As to Count Three, awarding Plaintiffs damages against Defendants, jointly and severally, including but not limited to compensatory, consequential, punitive and incidental damages in an amount to be determined at trial;

d) As to Count Four, awarding Plaintiffs damages against Defendants, jointly and severally, including but not limited to compensatory, special, consequential, punitive and incidental damages and reasonable attorneys' fees related thereto in an amount to be determined at trial;

e) As to Count Five, awarding Plaintiffs other appropriate equitable relief, to redress violations of ERISA and the Policy or to enforce any provisions of ERISA and the terms of the Plan;

f) Awarding Plaintiffs attorneys' fees under 29 U.S.C. § 1132(g)(1), court costs and all other reasonable costs incurred;

g) Awarding Plaintiffs pre- and post-judgment interest as allowed by applicable law;

h) Awarding such other and further legal or equitable remedy or relief as the Court may deem just and proper.

SELINGO GUAGLIARDO

Respectfully submitted,


By: _____
David W. Saba, Esquire
Attorney Id. 19648
345 Market Street
Kingston, PA 18704

By:_____
Al Holifield (BPR #015494) *pro hac to be filed*
Tina Haley (BPR #017592) *pro hac to be filed*
Holifield & Janich, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
(865) 566-0115

**ATTORNEYS FOR PLAINTIFFS**

4874-7844-3627, v. 1